IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

OMC LLC,

                      Plaintiff,                    OPINION AND ORDER

     v.                                        16-cv-833-wmc

S&E GOURMET CUTS, INC. d/b/a/
COUNTRY ARCHER,

                      Defendant.
_____

Defendant S&E Gourmet Cuts, Inc. d/b/a "Country Archer" is a California corporation with its principal place of business there, while plaintiff OMC LLC is a limited liability corporation with its principal place of business here in Wisconsin. In November of 2016, Country Archer sent a letter to OMC, accusing it of infringing on Country Archer's copyrights and trade dress related to beef jerky packaging and warning of commencement of litigation in California if not resolved outside of court. After further correspondence was exchanged between the parties, OMC filed this lawsuit in Wisconsin, seeking a declaratory judgment against Country Archer on its claims of trade dress and copyright infringement, as well as for violation of California unfair competition law.[1] Eleven days later, Country Archer made good on its original warning by filing a

---

[1] Given plaintiff's trademark and copyright-related claims for relief, the court has subject matter jurisdiction over this action. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks."); *see also Stuart Weitzmann, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008) ("Federal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a

mirror-image lawsuit in the Central District of California, affirmatively asserting claims for copyright infringement, Lanham Act violations and common law unfair competition.

Acknowledging the general deference given to a plaintiff's choice of forum, the defendant nevertheless moves to dismiss this declaratory judgment action because OMC only filed it to thwart the lawsuit Country Archer had already threatened to bring against OMC in the Central District of California. (Dkt. #6.) In the alternative, Country Archer moves to transfer this case to that court. (*Id.*) The court agrees that the facts here demonstrate that plaintiff OMC filed this case to preempt the imminent threat by defendant Country Archer to file suit in its home district. Therefore, plaintiff's claims here will be dismissed.

BACKGROUND[2]

Both OMC and Country Archer manufacture and sell beef jerky, among other products. The latter has sold meat snacks under the "Country Archer" label since at least 1978. In 2012, Country Archer began marketing and selling beef jerky with the product packaging design at issue in this case. (Decl. of Thomas J. Speiss, III Ex. 1 [hereinafter "Cease and Desist Letter"] (dkt. #8-1) at 1.) In 2016, OMC began selling its "Mighty"

---

coercive action arising under federal law.") (emphasis in original) (internal quotation marks and citation omitted).

[2] Because both parties rely on materials they submitted outside the pleadings, the court finds it appropriate to convert defendant's motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504 (7th Cir. 1998) ("Affidavits are not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56.").

brand of beef jerky in packaging that Country Archer claims to have been copied from its own design. (Compl. (dkt. #1) ¶ 6.)

On November 22, 2016, Country Archer's counsel, Thomas J. Speiss, III, sent OMC's counsel, Christopher Hussin, a letter accusing OMC of using packaging for its "Mighty" beef jerky that "subject[ed] it to claims under United States law for copyright infringement, trade dress infringement and unfair competition." (Cease and Desist Letter (dkt. #8-1) at 4.) Based on those accusations, Country Archer "respectfully request[ed]" that OMC: (1) "Modify its new . . . white-and-black logo to a different color scheme"; and (2) "Modify its product packaging to change or eliminate design elements" discussed elsewhere in the letter. (*Id.* at 6.) Speiss concluded his letter with the following paragraphs:

> As part of its request, Country Archer will offer [OMC] a reasonable period of time to modify its present trademarks and sell through its present inventory of products that are marketed and sold in the confusingly similar packaging. Please contact me on or before Tuesday, December 13, 2016 to advise me as to [OMC]'s intentions.
>
> Unless a settlement is reached by December 13, 2016, Country Archer will file suit against [OMC] in the Central District of California for copyright infringement and other claims. Such conduct, if proven, would entitle Country Archer to legal relief against [OMC] as well as its owners, officers and directors, which could include actual damages, realized profits, statutory damages up to $150,000, Country Archer's attorney fees and costs, as well as appropriate injunctive relief.

(*Id.* (emphasis in original).)

By email that same day, Hussin's legal assistant notified Speiss that he would be out of the office until November 30, 2016, but would respond upon his return. (Decl. of

Thomas J. Speiss, III Ex. 2 (dkt. #8-2).) On December 13, 2016, the actual deadline for settlement established in Speiss's original letter, OMC's Hussin finally responsed by email to Speiss, explaining that:

> As you know, I was away from the office for a number of days when you sent the initial demand letter. Due to my absence, and a client contact illness, we are not in a position to respond to your initial demand letter by today. We do, however, expect to respond in the next day or so.
>
> We trust this will be acceptable to your client.

(Decl. of Thomas J. Speiss, III Ex. 3 (dkt. #8-3).) That same day, Speiss responded by email, offering Friday, December 16, as an acceptable, response date. (Decl. of Thomas J. Speiss, III Ex. 4 (dkt. #8-4).) The following day, December 14, Hussin again replied by email, stating that "I am waiting for confirmation from the client, but I believe you should have the response by Friday at the latest." (*Id.*)

On December 16, 2016, OMC sent a letter through its counsel addressing Country Archer's infringement and unfair competition allegations. (Decl. of Thomas J. Speiss, III Ex. 5 (dkt. #8-5).) In that letter, Hussin outlined OMC's reasons for concluding that Country Archer's contentions lacked legal merit. Notably, that same day (in fact, mere minutes before sending the letter response by email), OMC filed its complaint for declaratory judgment without notifying Country Archer that it had done so, or even was intending to do so, unless one counted an ambiguous warning in the letter that "OMC is fully prepared to defend itself from [Country Archer's] unwarranted allegations." (*Id.* at 4; Decl. of Thomas J. Speiss, III (dkt. #8) ¶ 6.)

On December 27, 2016, Country Archer filed its own lawsuit in the Central District of California, affirmatively asserting copyright infringement, Lanham Act and common law unfair competition claims against OMC. (Decl. of Thomas J. Speiss, III Ex. 6 (dkt. #8-6).) Speiss avers that on December 21, 2016, after reviewing OMC's response and "finalizing" Country Archer's complaint, he learned "through independent sources" that OMC had filed this lawsuit, prompting him to revise the complaint accordingly before filing it in the Central District of California on the next business day that his firm's offices were open, which was December 27. (Decl. of Thomas J. Speiss, III (dkt. #8) ¶ 7.) Finally, Speiss asserts that Country Archer served its complaint on OMC on December 29, 2016, immediately after the summons was issued, having still not been served by OMC. (*Id.* at ¶ 8.)

OPINION

I.  **First-to-File Rule and Declaratory Judgment Actions**

"The general rule in situations where mirror image actions are pending in different districts . . . is that the first-filed action will be given priority and allowed to proceed in favor of the later action." *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.,* 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003). However, the Seventh Circuit "does not rigidly adhere to a first-to-file rule." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). In particular, "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief," the Seventh Circuit

"ordinarily give[s] priority to the coercive action, regardless of which case was filed first." *Id.* (citing past Seventh Circuit cases).

This exception to the first-to-file rule is grounded, in part, by the "well settled [principle] that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). In exercising this discretion, the Seventh Circuit directs that, among other things, a district court should keep in mind "the wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1203 (7th Cir. 1977) (quoting *Am. Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939)).

To avoid this court's erroneous exercise of its discretion on facts appearing to establish just such procedural fencing here, plaintiff OMC responds by arguing that it seeks "not just declaratory relief but also coercive relief" and, therefore, this case should not be viewed as a classic declaratory judgment action. (Compl. (dkt. #1) ¶¶ 28, 34, G; Pl.'s Opp'n Br. (dkt. #11) at 6-7.) However, in support, OMC can only point to requests for an award of attorneys' fees for Country Archer's "unreasonable" threats made "in bad faith" that OMC's "Mighty" beef jerky packaging infringes its trade dress and copyrights under 15 U.S.C. § 1117(a) and 17 U.S.C. § 505, respectively, and its request for a permanent injunction barring Country Archer from further making similar assertions.

Tellingly, plaintiff cites no case law supporting the proposition that a case brought under 28 U.S.C. § 2201(a) loses its character as a declaratory judgment action simply

because a party seeks attorney fees or injunctive relief, especially where both are premised on prevailing on its underlying declaratory judgment claims. Instead, the single case that plaintiff does cite, *Stericycle, Inc. v. City of Delavan*, 929 F. Supp. 1162 (E.D. Wis. 1996), merely explains that the declaratory judgment exception to claim preclusion under Wisconsin law does not apply when a party includes "a claim for coercive relief[, which] has the same preclusive effect whether or not there is also a claim for declaratory relief in the lawsuit." *Id.* at 1164. In contrast, the Seventh Circuit "adopted the following test" in *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711 (7th Cir. 2009): "Where state and federal proceedings are parallel and the federal suit contains claims for both declaratory and non-declaratory relief, the district court should determine whether the claims seeking declaratory relief are independent of the declaratory claim. If they are not, the court can exercise its discretion . . . and abstain from hearing the entire action." *Id.* at 716-17 (footnote omitted). Thus, *Stericycle* is not only unhelpful, but plaintiff OMC is plainly bringing a declaratory judgment action under *Vulcan*, given that the fees and injunctive relief it seeks depend entirely on prevailing on its declaratory judgment claims.

Moreover, contrary to plaintiff's assertion that defendant must demonstrate that the 28 U.S.C. § 1404(a) transfer factors clearly favor the Central District of California for this case to be dismissed *or* transferred (Pl.'s Opp'n Br. (dkt. #11) at 14, 17-18), a finding that OMC's filing of this declaratory judgment action was a blatant tactic to jump the line of Country Archer's threatened infringement lawsuit in the Central District of California would provide an independent, compelling reason for the court to decline to

7

hear this case, at least where, as appears to be the case here, there is no "outstanding factor" pointing to one forum or the other, as "will inevitably be the case in actions . . . where the owner of a trademark is in one location, and an alleged infringer is at some distance." *Tempco*, 819 F.2d at 748-49 (affirming the district court's decision to decline jurisdiction over the first-filed declaratory judgment action without evaluating the § 1404(a) factors, explaining that "[w]here . . . the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed"); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) ("What is true is that because the issuance of a declaratory judgment is discretionary, [*Tempco*, 819 F.2d at 747], a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way.").[3]

## II. Anticipatory Suit

This then leaves a final question: whether plaintiff's declaratory judgment action here is properly labeled "anticipatory." A lawsuit is anticipatory when it is filed "under

---

[3] Plaintiff's citations to *American Medical Ass'n v. 3Lions Publishing, Inc.*, No. 14 C 5280, 2015 WL 1399038 (N.D. Ill. Mar. 25, 2015), and *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829 (N.D. Ill. 2004), are not to the contrary, as those cases merely stand for the unremarkable proposition that the § 1404(a) factors may remain relevant in deciding a motion to *transfer* a mirror-image case. *See Schwarz*, 317 F. Supp. 2d at 837-38 (denying motion to transfer later-filed case to district in which declaratory judgment action was filed first because the convenience and interest of justice factors favored Illinois); *3Lions*, 2015 WL 1399038, at *6 (denying motion to transfer first-filed declaratory judgment action because the convenience and interest of justice factors favored Illinois); *cf. Eli's Chi. Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 909 (N.D. Ill. 1998) (granting the defendant's motion to dismiss anticipatory declaratory judgment action without addressing the plaintiff's arguments regarding venue, explaining that the court was "entertaining a motion to dismiss, not a motion to transfer," and that those "venue arguments should be addressed in a 1404(a) motion to transfer filed in the [other] court").

threat of an imminent suit and assert[s] the mirror-image of that suit in another district." *Schwarz*, 317 F. Supp. 2d at 833. Accordingly, courts in this circuit have paid special scrutiny to first-filed declaratory judgment actions:

> The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose the forum. Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file.

*Id.* at 833 (citing *Barrington Grp.*, 239 F. Supp. 2d at 873-74).

The relevant facts for close scrutiny are not in dispute here. On November 22, 2016, Country Archer sent OMC a letter (1) accusing it of copying proprietary beef jerky packaging and (2) warning that "[u]nless a settlement is reached by December 13, 2016, Country Archer will file suit against [OMC] in the Central District of California for copyright infringement and other claims." (Cease and Desist Letter (dkt. #8-1) at 6 (emphasis in original).) After obtaining Country Archer's consent to extend its response date to December 14, OMC filed this action on December 16, the same day it sent a letter denying Country Archer's allegations.

In response to defendant's motion to dismiss, plaintiff's insistence that Country Archer's letter "created apprehension but did not make clear that a suit was imminent" (Pl.'s Opp'n Br. (dkt. #11) at 10) strikes this court as more than a little disingenuous. In support of that assertion, plaintiff attempts to characterize Country Archer's letter as "moderate and exploratory in tone," noting that it was labeled a "Confidential Settlement Communication" in the header. (*Id.* at 9.) Plaintiff also points to Country Archer's counsel having "volunteered" to extend the response deadline without objection, despite

OMC's counsel merely expressing his "belief" that he would address the allegations by the extended deadline, rather than "promising" to do so. (*Id.* at 10.) Finally, plaintiff argues that defendant not further threatening litigation in his later email communications between the parties undermines any claim of plaintiff perceiving an imminent danger. (*Id.* at 10.)

The *actions* of the parties further undermines each of plaintiff's arguments. As an initial matter, plaintiff's assertion that defendant's cease and desist letter and limited, subsequent communications extending the response date set by that letter did not sufficiently put it on notice of imminent litigation in light of defendant's willingness to negotiate a resolution outside of court, is at best uncomfortably incongruent with its position that Country Archer's single letter was sufficient to generate the need for its declaratory judgment action. Regardless, defendant's letter was a clear threat of the who, what, when, where, why *and* how of an imminent litigation. Plaintiff's suggestion that defendant's counsel was *too* polite in his communications with plaintiff's counsel subverts the well-recognized public policy in favor of settlements. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994) (acknowledging that "public policy wisely encourages settlements"); *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.*, 489 F.2d 974, 978 (7th Cir. 1973) ("It cannot be gainsaid that in general settlements are judicially encouraged and favored as a matter of sound public policy.").

Indeed, *avoiding* unnecessary litigation is one of the reasons why courts treat anticipatory filings as exceptions to the first-to-file rule. *See Research Automation*, 626 F.3d at 980 (filing of an anticipatory action "only exacerbates the risk of wasteful litigation");

*Eli's Chi. Finest*, 23 F. Supp. 2d at 909 (describing the inefficiencies that would be created if litigants were incentivized to "rapidly bring[] suit in hopes of securing a favorable forum" rather than mutually engage in "a good faith effort at negotiation"). If anything, it is *OMC's* failure to engage in *any* negotiation or even notify Country Archer that it had already filed this action -- all while failing to serve Country Archer with the complaint in the eleven days before it filed suit in the Central District of California -- that is deserving of reproach.

Similarly, the court finds unpersuasive plaintiff's argument that defendant's motion should be denied because Country Archer was aware that OMC had filed this case before it filed in California. In support, plaintiff cites *Indianapolis Motor Speedway v. Polaris Industries, Inc.*, No. IP 99-1190-C-B/S, 2000 WL 777895 (S.D. Ind. Apr. 28, 2000), for the proposition that if "the second-filed plaintiff had notice of the first-filed suit before commencing its own action," then "the second-filed plaintiff was actually the party improperly seeking to control the choice of venue[.]" (Pl.'s Opp'n Br. (dkt. #11) at 12.)

As defendant points out in its reply brief, however, while the district court in *Indianapolis Motor Speedway* explained that it would be unwise for courts to "condone a blatant attempt to control venue by ruling that a delay in service of the complaint alone provides a compelling reason to subjugate a previously-filed declaratory judgment action, especially when service occurred within the time frame allowed by Federal Rule of Civil Procedure 4(m)," 2000 WL 777895, at *5, this was not the court's essential holding. Instead, the district court found that the anticipatory suit exception to the first-to-file

rule did not apply because "the facts surrounding [the first-filing plaintiff's] commencement of the Minnesota action d[id] not indicate that it was made in bad faith or intended as a preemptive strike." *Id.* at *3. On the contrary, that plaintiff did not file until *six months* after the defendant demanded that it stop using certain marks, which was also "several weeks to a month after negotiations had broken down." *Id*. Obviously, the material facts of *Indianapolis Motor Speedway* are far different from those here, involving mere days delay from the arguable breakdown of negotiations while still being strung along by OMC.

Finally, the court rejects plaintiff's argument that Country Archer's intent to file suit urgently is somehow undermined by waiting until December 27, 2016, to file its complaint, fourteen days after the initial deadline in its letter and eleven days after OMC responded to its demand. In *Tempco*, the Seventh Circuit affirmed the district court's dismissal of a declaratory judgment action filed the same day Tempco received a letter stating that Omega, the party accusing Tempco of trademark infringement, had no alternative but to file suit, even though Omega did not actually file its trademark infringement lawsuit *until more than two weeks* after the response deadline in Omega's cease and desist letter, as well as *two weeks* after Tempco had provided notification of its refusal to stop using the allegedly infringing mark. 819 F.2d at 747.

In light of *Tempco*, the amount of time that Country Archer took to file its complaint is obviously *not* egregious, particularly given counsel's explanations that his law firm's offices were closed for several days between the 16th and 27th of December in

light of a weekend and the Christmas holiday.[4]  *See also Channel Clarity, Inc. v. Optima Tax Relief, LLC*, No. 14 C 8945, 2015 WL 71023, at *3 (N.D. Ill. Feb. 18, 2015) (citing cases from the Northern District of Illinois that have "followed *Tempco*'s precedent in similar circumstances" where delay in filing of coercive action ranged from three to forty-five days).  Rather, similar to the first-filing party in *Tempco*, OMC's action here involved nothing more than a disfavored attempt to beat Country Archer to the courthouse.  Accordingly, plaintiff's case will be dismissed.

ORDER

IT IS ORDERED that:

1) defendant's motion to dismiss (dkt. #6) is GRANTED after conversion to a motion for summary judgment under Fed. R. Civ. P. 12(d); and

2) the clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 14th day of August, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] For the same reason, plaintiff's reliance on *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994), is flawed.  In that case, the later-filing party filed its lawsuit some *eight months* after the declaratory judgment action was filed.  *Id.* at 579.